■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN DRISCOLL, Appellant.— Judgment convicting defendant upon his plea of guilty of the crime of manslaughter in the first degree and bringing up for review an order dated May 13, 1966, denying defendant's application to withdraw his plea of guilty, reversed, on the law and the facts, to the extent of remanding the application and ordering a new hearing on defendant's application for permission to withdraw his plea of guilty. While, as respondent contends, there may well be no merit to defendant's contention with reference to his being coerced into the plea, he was without effective assistance of counsel on his motion to withdraw his plea, which was a critical stage of the proceedings. By this holding we do not mean to infer that counsel did not act with the utmost good faith. In fact he did so act. However, in the circumstances of this case, where counsel was compelled to be a witness called by the People, he was placed in an untenable position and by virtue of the lawyer's involvement, defendant was denied the effective and affirmative representation of counsel and became entitled to the appointment of a new attorney (*People* v. *Rozzell,* 20 N Y 2d 712; *People* v. *Kennedy,* 22 N Y 2d 280; *People* v. *Boyd,* 22 N Y 2d 707). Concur — Botein, P. J., Steuer, Rabin and McNally, JJ.; Tilzer, J., dissents in the following memorandum: I dissent and vote to affirm. On the day of sentence the appellant moved to withdraw his plea of guilty (after his younger brother had already been committed to the Elmira Reception Center — the prejudice to the People if appellant's motion should be granted is obvious) " on the grounds a promise [had] been made [by the court] that so far had been violated. My brother was promised he had no time and he was sent to the Elmira Reception [*sic*] ". The court denied that application, rejecting appellant's assertion that an " alleged unfulfilled promise [had been] made " to the defendant that his brother would be given a suspended sentence. Nonetheless, appellant renewed his motion, however, this time predicating it on the ground that he was innocent as he had only acted in self-defense. At this juncture, the court put off sentencing the appellant for two weeks, which time was allocated to allow counsel to formalize the motion. Lastly, the appellant asked the court to stay the execution of his brother's sentence, which motion was denied. Still later, the appellant formally moved to withdraw his plea and a hearing on the issues was set down for January 14, 1966. It must be presumed that during the weeks that followed that counsel and the appellant consulted with each other as to the proof to be submitted on the hearing. It is quite clear, moreover, that the appellant elected to proceed with his assigned counsel, Mr. Solomon, the attorney originally requested by him and one who had represented appellant in a prior case. Appellant and his attorney con-

sidered their position on the hearing harmonious enough for Mr. Solomon to continue to represent appellant, although both must have clearly appreciated the fact that counsel might be called as a witness. At the hearing Mr. Solomon continued his conscientious and effective legal representation of appellant, exerting every effort as appellant's advocate "to put forth every and all conceivable grounds why sentence should not be imposed." And, ever solicitous of his client's wishes, the appellant, with the permission of the court, was given the opportunity to introduce matter into the record and was himself permitted to examine various witnesses. When Mr. Solomon himself was called to the stand by the People and claimed the attorney-client privilege, the court ruled that the appellant had waived the privilege by testifying and directed the attorney to respond to the inquiries concerning the attorney's communication with his client. At the close of his direct testimony, the appellant, although apprised of his right to cross-examine Mr. Solomon, declined to do so. Certainly, it would not have redounded to appellant's benefit for the court to have appointed other counsel for him at this point to cross-examine Mr. Solomon since the latter in his testimony merely recounted his conversation with the appellant pertaining to appellant's brother's sentence. Apart from the appellant's own testimony, and not even touching upon Mr. Solomon's averments, appellant's mother, his sister, his brother's attorney and even his brother, all swore that no pledge as claimed by appellant had ever been made concerning the brother's sentence. The hearing court in the circumstances found that no promise of a suspended sentence was made to appellant's brother, nor was the appellant himself led to believe that such a commitment had been made. Faced with the determination of the hearing court that the "factual predicate" for his motion "to withdraw his plea has been effectively destroyed", the appellant does not contest the soundness of this finding but argues that his right to counsel had been impaired. Unlike *People* v. *Kennedy* (22 N Y 2d 280), *People* v. *Boyd* (22 N Y 2d 707), and *People* v. *Rozzell* (20 N Y 2d 712) cited by the majority, appellant's counsel did not abandon his role as an active advocate but continued to press appellant's views and indeed advanced additional bases for granting the relief sought. The duty owed appellant of conscientious and effective legal representation was recognized by the hearing court and extended to appellant by counsel Solomon. The judgment convicting appellant, upon his plea of guilty, of the crime of manslaughter in the first degree and sentencing him as a third felony offender to a term of from 15 to 25 years, should be affirmed.